# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1895 | **DATE** | 1/7/2003 |
| **CASE TITLE** | Menasha Corporation vs. News America Marketing, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

---

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Menasha's Motion in Limine to Exclude the Relevant Market Opinions of Drs. Rapp and Stirch is DENIED. News America's Motion in Limine to Exclude the Report and Testimony of James Tenser and the Opinions of Dr. James Langenfeld that rely on Tenser's Survey Research is GRANTED IN PART AND DENIED IN PART. News America's Motion to Strike Menasha's response to defendants' Local Rule 56.1 Statement is DENIED. News America's Motion to Strike Menasha's Statement of Material Facts under Local Rule 56.1 is DENIED. News America's Motion for Summary Judgment is GRANTED and the case is DISMISSED pursuant to Federal Rule of Civil Procedure 56.

(11) ■ [For further detail see order attached to the original minute order.]

---

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JAN 0 8 2003 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | | |
| WAP | courtroom deputy's initials | 03 JAN -8 AM 8: 11 Date/time received in central Clerk's Office | mailing deputy initials | | |

FILED

JAN - 7 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

MENASHA CORPORATION,

          Plaintiff,

    v.

NEWS AMERICA MARKETING IN-
STORE, INC. and NEWS AMERICA
MARKETING IN-STORE SERVICES,
INC.,

          Defendants.

Case No. 00 C 1895

Hon. Harry D. Leinenweber

**DOCKETED**

JAN - 8 2003

DOCKETED

1 - 8 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Menasha Corporation ("Menasha") brought this action alleging that Defendants News America Marketing In-Store, Inc. and News America Marketing In-Store Services, Inc. (collectively referred to as "News America") violated federal and state antitrust laws by entering into exclusive contracts with retail chains for the placement of at-shelf coupon dispensers and by exercising its monopoly power in the market for at-shelf coupon dispensers to foreclose competition. Now before the Court are News America's Motion for Summary Judgment, Motion In Limine to Exclude the Report and Testimony of James Tenser and the Opinions of Dr. James Langenfeld That Rely on Tenser's Survey Research, Motion to Strike Menasha's Responses to Defendants' Local Rule 56.1 Statement of Facts, and Motion to Strike Menasha's Statement of Facts under Local Rule 56.1. Also, before the Court is Menasha's Motion In

Limine to Exclude the Relevant Market Opinions of Drs. Rapp and
Stiroh.

## **BACKGROUND**

Manufacturers of packaged goods rely on a variety of mediums
to advertise and promote their products to consumers.  One of the
methods manufacturers sometimes choose to promote their products is
the placement of a coupon dispenser next to the product on retail
store shelves (referred to as "at-shelf coupon dispensers").  An
at-shelf coupon dispenser is not the only method of placing coupons
in proximity to product, other methods include "on-pack coupons"
attached directly to the product, "tear pad coupons" affixed to the
shelf near the product, and in-store demonstrations, at which
demonstrators distribute coupons to consumers along with samples of
the product.  In addition, manufactures may choose from a variety
of other in-store marketing vehicles to target consumers – shopping
cart ads, shelf signs, manufacturers' displays, and supermarket
flyers to name a few.  Menasha and News America are both in the
business of selling such in-store marketing products to
manufacturers of packaged goods.

At issue in this case is one particular in-store marketing
product:  at-shelf coupon dispensers.  News America sells an at-
shelf coupon dispenser consisting of a reusable plastic container
with a blinking red light that contains manufacturers' coupons for
consumer packaged goods.  News America sells at-shelf coupon

dispensers directly to manufacturers, typically guaranteeing placement in particular retail chains. News America also offers manufacturers the guarantee of "category exclusivity," meaning that the manufacturer is assured that no other at-shelf coupon dispenser in a specific product category will be placed in particular retail stores during an agreed-upon period. News America is able to guarantee category exclusivity to manufacturers by entering into multi-year contracts with retail chains under which News America is granted the exclusive right to place at-shelf coupon dispensers in the chain's stores. In exchange, News America offers the retailers a percentage of the revenues News America derives from the sale of at-shelf coupon dispensers to manufactures for placement in that chain's stores.

Menasha sells manufacturers a disposable at-shelf coupon dispenser made of paper. However, adhering to a different business model from that of News America, Menasha does not promise manufacturers category exclusivity, nor does Menasha offer to enter into revenue sharing agreements with retail chains in exchange for exclusive access to their stores. In recent years, News America has enjoyed great success in expanding its business in at-shelf coupon dispensers, while Menasha's expectations for the growth of its at-shelf coupon business have not been fulfilled.

Menasha believes that News America has violated federal and state antitrust laws by entering into exclusive contracts with

retail chains for the placement of at-shelf coupon dispensers. Menasha also contends that News America exercises monopoly power in the market for at-shelf coupon dispensers, and that News America has used its market power to foreclose competition. Accordingly, Menasha brought the present action alleging unreasonable restraint of trade in violation of Section 1 of the Sherman Act (Counts I and II), monopolization and attempted monopolization in violation of Section 2 of the Sherman Act (Counts III and IV), monopolization and attempted monopolization in violation of the Illinois Antitrust Act (Counts V and VI), restraint of trade in violation of the Illinois Antitrust Act (Count VII), "inducing refusals to deal" in violation of the Illinois Antitrust Act (Count VIII), unfair methods of competition (Count IX), and tortious interference with business relationships (Count X). Now before the Court are News America's Motion for Summary Judgment, Motion in Limine to Exclude the Report and Testimony of James Tenser and the Opinions of Dr. James Langenfeld That Rely on Tenser's Survey Research, Motion to Strike Menasha's Responses to Defendants' Local Rule 56.1 Statement of Facts, and Motion to Strike Menasha's Statement of Facts Under Local Rule 56.1. Also, before the Court is Menasha's Motion In Limine to Exclude the Relevant Market Opinions of Drs. Rapp and Stiroh. The Court will begin by addressing the parties' motions to strike and motions in limine.

## MOTIONS TO STRIKE

### *Menasha's Statement of Material Facts*

News America requests that the Court strike in its entirety the document entitled "Menasha's Statement of Material Facts Under L.R. 56.1," which Menasha submitted as a response to the Statement of Material Facts accompanying News America's Motion for Summary Judgment. Menasha states that this document was "submitted in reply to [News America's] Statement *as a total replacement*." (emphasis added). But, as News America correctly points out, Local Rule 56.1 in no way authorizes a "total replacement" in response to a movant's statement of facts.

Under Local Rule 56.1(a)(3), a party moving for summary judgment must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. News America submitted such a statement. Under Local Rule 56.1(b)(3), two types of submissions are permitted in response to a moving party's Rule 56.1 statement of facts: (1) a response to each numbered paragraph supported by references to the record, and (2) a statement of short numbered paragraphs setting forth additional facts that require denial of summary judgment, supported by citations to the record. L.R. 56.1(b)(3)(A)-(B). The "total replacement" submitted by Menasha completely disregards these requirements - it is neither a response to News America's

Statement of Material Facts nor is it a true statement of additional facts as contemplated by Local Rule 56.1.

Local Rule 56.1 serves the important function of structuring the summary judgment process so as to "assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with material evidence." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999). By filing an unauthorized "alternative" statement of facts, Menasha's counsel seriously hindered the Court's ability to perform its task of identifying those facts actually in dispute. *See Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527-28 (7th Cir. 2000). However, as News America has already gone to the trouble of responding to this document, the Court will treat this submission a statement of additional facts. Nevertheless, in ruling on News America's Motion for Summary Judgment, the Court will disregard all argumentative, conclusory, unsupported or otherwise non-conforming portions of Menasha's "Statement of Material Facts Under L.R. 56.1."

### *Menasha's Response to News America's Statement of Facts*

News America also requests that the Court strike Menasha's Response to News America's Rule 56.1 Statement of Facts. News America has taken great pains to meticulously detail the numerous shortcomings in Menasha's Response. News America correctly points out that Menasha's Response is replete with improper argument,

general denials, responses unsupported by citations to the record, and citations to large documents with no guide as to where in the document the purported fact is to be found. Although it is within this Court's discretion to enforce Local Rule 56.1 strictly, *Bordelon*, 233 F.3d at 527, the Court declines to impose the harsh penalty of striking Menasha's Response in its entirety. Nevertheless, in reaching its ruling, the Court will disregard all argumentative, conclusory, or unsupported portions of Menasha's Response to News America's Rule 56.1 Statement of Facts.

## MOTIONS IN LIMINE

News America and Menasha have filed dueling motions to exclude the other's expert opinion defining the relevant antitrust market in this case. The Court will begin with News America's Motion to Exclude the Report and Testimony of James Tenser and the Opinions of Dr. James Langenfeld That Rely on Tenser's Survey Research.

### *Report and Testimony of James Tenser and Dr. James Langenfeld*

James Tenser ("Tenser") is a journalist who frequently writes on issues relating to brand marketing of consumer packaged goods. Tenser has had no formal training or education in constructing and administering surveys, but was paid by Menasha to use his industry contacts to conduct a survey of brand and promotional management decision makers regarding their views on the market for in-store promotional services. Tenser's survey results focused on the unique characteristics and benefits of at-shelf coupon dispensers

as perceived by brand marketing executives. Dr. James Langenfeld ("Langenfeld") used the results of this survey, along with deposition testimony and various other sources of market data, to form his opinion that at-shelf coupon dispensers form a relevant market for antitrust purposes.

News America contends that Tenser's survey research suffers from multiple methodological flaws that render it unreliable, and therefore inadmissible under Federal Rule of Evidence 702. News America also argues that, because Tenser's results are unreliable, Langenfeld's opinion that at-shelf coupon dispensers constitute the relevant market must also be barred.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), courts must act as gatekeepers to ensure that expert testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. Reliability is the touchstone for admission of expert testimony based on scientific, technical or other specialized knowledge. *Daubert,* 509 U.S. at 599. Courts have generally found consumer survey evidence admissible under *Daubert* if a qualified expert testifies that the survey was conducted according to generally-accepted principles of survey research. *See Simon Property Group, L.P. v. MySimon, Inc.*, 104 F. Supp. 2d 1033, 1039 (S.D. Ind. 2000); Shari Seidman Diamond, "*Reference Guide on Survey Research,*" in *Reference Manual on Scientific Evidence* 233

(2d ed. 2000)("*Reference Guide*"). In conducting his survey, Tenser
deviated from several important principles of survey research.

For survey results to be considered reliable, the design,
administration, and interpretation of the survey must be
appropriately controlled to ensure objectivity. For a survey to be
properly designed, an appropriate target population must be
identified, a sample that accurately represents the target
population must be selected, and procedures must be taken to reduce
the likelihood of a biased sample. *Reference Guide* at 239-46. The
evidence shows that none of these standard protocols of survey
research were observed by Tenser. Tenser's "universe" of potential
respondents consisted entirely of individuals and companies that
Tenser knew through his work as a journalist. Tenser did not make
any attempt to select a sample to approximate the relevant
characteristics of the target population. Adding further to the
unreliability of his results, Tenser breached a fundamental
principle of survey research by being aware of both the sponsor of
the survey and its purpose while conducting his interviews. *See*
*Reference Guide* at 266. Finally, when conducting the interviews,
Tenser made no audio recording of the interviews and did not record
the responses verbatim, relying instead on handwritten notes
paraphrasing the responses he received. News America points to
several concrete examples of how this failure to record responses
verbatim allowed for later transcriptions that skewed the responses

to sound more favorable to Menasha's view of the relevant market. Because Tenser failed to observe numerous fundamental protocols necessary to protect the objectivity and reliability of the survey, Tenser's survey report and deposition testimony do not meet the reliability requirement of Federal Rule of Evidence 702 and must be excluded.

News America also contends that, because the results of Tenser's survey are unreliable, the Court must also exclude the opinions of Dr. Langenfeld concerning the definition of the relevant product market in this case. News America correctly asserts that, under Federal Rule of Evidence 703, a party seeking admission of an expert opinion based upon a survey must demonstrate that the expert's reliance on such data is reasonable. *See Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1205 (E.D.N.Y. 1983). Although Langenfeld refers to Tenser's survey results several times throughout his report, the Court finds that Langenfeld based his opinion that at-shelf coupon dispensers are the relevant antitrust market in this case on numerous sources of information independent of Tenser's flawed survey. Accordingly, the Court will not grant News America's motion fully and exclude Langenfeld's opinion in its entirety. However, because Tenser's survey has been found to be unreliable and inadmissible, those portions of the report quoting or otherwise referencing Tenser's survey are excluded pursuant to Federal Rule of Evidence 703.

## *Relevant Market Opinion of Drs. Rapp and Stiroh*

Menasha argues that the relevant market opinion offered by News America's experts must be barred because the method they employed to determine the relevant market is unreliable and their analysis ignores "basic market realities." Specifically, Menasha contends that Rapp and Stiroh deviated from generally-accepted principles when they defined the relevant market for this case by simply "counting the number of times products are 'mentioned' in a hand-picked set of documents, and declaring that products 'mentioned' an unidentified number of times must be reasonable substitutes for [News America's] coupon machines." Menasha's motion would be well-taken if this was an accurate description of the methodology employed by Rapp and Stiroh. This description, however, inaccurately characterizes the methodology of Rapp and Stiroh in several significant aspects.

In forming their relevant market opinion, Rapp and Stiroh began their analysis with the Supreme Court's teaching that a relevant market for antitrust purposes consists of products that are "reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Following this standard, Rapp and Stiroh determined the purpose of at-shelf coupon dispensers, generated a universe of substitutes for at-shelf coupon dispensers that could theoretically serve the same purpose, and then examined various

sources of market data to winnow this group of theoretical substitutes down to a relevant market containing products that are actually used by consumers of at-shelf coupon dispensers to achieve the same purpose. While Menasha may take issue with Rapp and Stiroh's characterization of the purpose of at-shelf coupon dispensers, or their analysis of how the market is perceived by industry participants, these criticisms do not undermine the essential reliability of the methods employed by News America's experts in reaching their opinion that the relevant market in this case cannot be limited to at-shelf coupon dispensers. Menasha's Motion in Limine to Exclude the Relevant Market Opinions of Drs. Rapp and Stiroh must therefore be DENIED.

## MOTION FOR SUMMARY JUDGMENT

### *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively

demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). While a district court may not resolve genuine factual disputes through summary judgment, "weak factual claims can be weeded out through summary judgment motions." *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476 (7th Cir. 1988). Summary judgment may be especially appropriate in the antitrust context because of the chill antitrust litigation can have on legitimate competition. *Id.* at 475-76; *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). For this reason, an antitrust plaintiff opposing a motion for summary judgment must present evidence that tends to exclude the possibility that the defendant's conduct was as consistent with competition as with illegal conduct. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

### Menasha's Antitrust Claims

News America moves for summary judgment on Menasha's Sherman Act Section 1 claims (Counts I and II), Sherman Act Section 2 claims (Counts III and IV), and Illinois Antitrust Act claims (Counts V-VIII). News America contends that all of News America's antitrust claims can be dismissed for Menasha's failure to properly define a relevant market. Before examining News America's arguments, the Court must first address Menasha's assertion that

analysis of the relevant market is unnecessary for its Section 1 claims because there is evidence of a horizontal conspiracy based upon exclusive contracts that are illegal per se.

### Per Se Illegality under Section 1 of the Sherman Act

As part of its response to News America's criticisms of its relevant market definition, Menasha argues that relevant market analysis is irrelevant to its claims in Counts I and II because News America's contracts with retailers are "per se illegal" under Section 1 of the Sherman Act, thus obviating the need for a defined relevant market.

A successful claim under Section 1 of the Sherman Act requires proof of three elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury. *Denny's Marina, Inc. v. Renfro Productions, Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993). There are two standards for evaluating whether an alleged restraint of trade is unreasonable: the per se rule and the Rule of Reason. *See NCAA v. Board of Regents*, 468 U.S. 85, 100-04 (1984). The per se rule is invoked when surrounding circumstances and/or the nature of the agreements makes the probability that the practices are anticompetitive so high, further inquiry into the particular market context is unnecessary. *Id.* at 100. Menasha argues that the exclusive contracts News America entered into with retailers fall within the per se rule and were part of a horizontal

agreement among retailers, orchestrated by News America, to exclude News America's low-price competitors. Menasha's attempt to have its Section 1 claims analyzed under the per se rule must be rejected.

As a threshold matter, nowhere in its detailed Complaint did Menasha ever allege a News America-engineered horizontal agreement among retailers in violation of Section 1 of the Sherman Act. It is well-settled that a plaintiff may not amend its complaint through arguments in its brief in opposition to a motion for summary judgment. *Shanahan v. City of Chicago*, 82 F.3d 776, 781, (7th Cir. 1996)(citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984). Menasha's new theory for its Section 1 claims could be rejected on this basis alone. More importantly, judged on the merits, Menasha's theory of a horizontal conspiracy simply doesn't hold water. Menasha points to no evidence in the record from which a jury could reasonably find that there existed a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 768 (1984). The mere fact that large numbers of retailers agreed to News America's exclusive contracts is not sufficient to support an inference of a horizontal agreement among retailers, and is clearly insufficient to allow it to proceed to trial on this theory. *Cf. Id.* at 768 (holding that a plaintiff must adduce either direct or circumstantial evidence reveling a

- 15 -

"unity of purpose or a common design and understanding"). Moreover, the agreements at issue in this case do not reflect practices that are so manifestly anticompetitive so as to allow the Court to accept Menasha's invitation to view News America's conduct through the prism of the per se rule. *See NCAA*, 468 U.S. at 103-04; *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 8 (1979). The Court will therefore analyze Menasha's Section 1 claims under the Rule of Reason.

## Menasha's Sherman Act Claims

Because "an antitrust policy divorced from market considerations would lack any objective benchmarks" *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 53 n.21 (1977), analysis of claims of monopolization under Section 2 of the Sherman Act, as well as Section 1 claims analyzed under the Rule of Reason, requires the trier of fact to begin by delineating the relevant market. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 531 (7th Cir. 1986). A relevant market is comprised of those "commodities reasonably interchangeable by consumers for the same purposes. . . ." *du Pont*, 351 U.S. at 395. Because the plaintiff always bears the burden of proving relevant market, "to survive summary judgment on [its] antitrust claims, the plaintiff[] must offer admissible evidence that is sufficient for a jury to find that the proposed relevant market[] [is] accurate." *Berlyn, Inc. v. Gazette Newspapers*, 223 F. Supp. 2d 718, 726-27 (D. Md. 2002).

Based on the record before the Court, there is no evidence from
which a jury could reasonably find that Menasha has met its burden
of proving that the relevant market in this case is limited to at-
shelf coupon dispensers.

Attempting to provide support for a relevant market limited to
at-shelf coupon dispensers, Menasha's expert Dr. Langenfeld points
to six ways in which at-shelf coupon dispensers provide benefits
that are unique or different than other in-store promotional
vehicles. Leaving aside the issues created by Dr. Langenfeld's
reliance on the inadmissible survey results generated by James
Tenser, the six characteristics selected by Dr. Langenfeld strike
the Court as an awkward and forced attempt to "define the elements
of the relevant market to suit its desire for high market share,
rather than letting the market define itself." *PepsiCo, Inc. v.
Coca-Cola Co.*, 114 F. Supp. 2d 243, 249 (S.D.N.Y. 1995). Four of
the six characteristics of at-shelf coupon dispensers named by Dr.
Langenfeld - providing consumers with a discount, conspicuousness,
being "cost effective," and reaching consumers at the point of
purchase - are all shared in some degree with many other types of
in-store promotional vehicles such as on-pack coupons, tear pad
coupons affixed to the shelf near the product, and in-store
demonstrations at which demonstrators distribute coupons. Contrary
to Menasha's suggestion, it is not required that products be
completely fungible to be considered part of the same relevant

- 17 -

market under the Sherman Act, only that they are "reasonably interchangeable by consumers for the same purposes. . . ." *du Pont*, 351 U.S. at 395. Langenfeld's focus on the relative characteristics and benefits of different in-store marketing products is the very approach to defining relevant markets repudiated by the Supreme Court in *United States v. Continental Can Co.*, 378 U.S. 441, 449-58 (1956)(rejecting the plaintiff's attempt to place glass and metal containers in different relevant markets based on different characteristics).

News America points to ample evidence in the record supporting its contention that the consumers of at-shelf coupon dispensers do in fact view at-shelf coupon dispensers as reasonably interchangeable with other in-store marketing vehicles, despite the fact that each in-store marketing vehicle may have its own unique advantages and features. Based on the record presented, the Court cannot accept Menasha's definition of a relevant market limited to at-shelf coupon dispensers. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)(holding that when an expert's opinion regarding the relevant market is not supported by sufficient facts, or when the record contradicts or renders the opinion unreasonable, it cannot support a jury's verdict). Because Menasha has failed to provide a factual basis sufficient to justify its delineation of the relevant market, News America is entitled to summary judgment in its favor on the Sherman

- 18 -

Act claims in Counts I-IV. *See PepsiCo, Inc. v. Coca-Cola Co.*, No. 00-9342, 2002 WL 31866172 (2d Cir. Dec. 24, 2002)(affirming a district court's decision to grant summary judgment in defendant's favor based on plaintiff's failure to properly define the relevant market for Sherman Act claims).

### *Menasha's Illinois Antitrust Act Claims*

In addition to its federal antitrust claims, Menasha also alleges four violations of the Illinois Antitrust Act that parallel its Sherman Act claims. The Illinois Antitrust Act provides that "[w]hen the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act." 740 ILCS 10/11. Menasha's claims under Section 3 of the Illinois Antitrust Act for monopolization (Count V), attempted monopolization (Count VI), and restraint of trade (Count VII) clearly parallel its Sherman Act claims set forth in Counts III, IV and I respectively. Count VIII alleges a claim for "inducing refusals to deal under the Illinois Antitrust Act." Although Menasha did not raise a refusal to deal allegation in its Sherman Act claims, the threshold requirement of defining the relevant market is applied with equal force in the context of refusals to deal. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 595 (1985). Accordingly, for the reasons stated in the Court's discussion of Menasha's Sherman Act claims,

News America is entitled to summary judgment on Counts V-VIII of Menasha's Complaint. *See A & A Disposal and Recycling, Inc. v. Browning-Ferris Industries of Illinois, Inc.*, 279 Ill.App.3d 337, 664 N.E.2d 351 (1st Dist. 1996)(holding that a plaintiff's failure to establish a well-defined relevant market entitles a defendant to summary judgment for claims under Section 3 of the Illinois Antitrust Act).

### Menasha's Unfair Competition and Tortious Interference Claims

In Counts IX and X, Menasha alleges claims under Illinois law for unfair methods of competition and tortious interference. The Court will address each in turn.

### Unfair Methods of Competition

Count IX actually contains three separate causes of action under Illinois law. In Count IX, Menasha claims that News America's wrongful conduct supports claims under: (1) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"); (2) the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.* ("DTPA"); and (3) common law unfair competition.

ICFA was enacted to create "broad protective coverage of consumers from the many types of deceptive or unfair selling and advertising techniques used by businesses." *Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 429 N.E.2d 1267, 1277 (1st Dist. 1981).

For a competing business to have standing to sue under ICFA, it must establish by clear and convincing evidence how the complained-of conduct implicates consumer protection concerns. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999); *Hartman Co. v. Capital Bank and Trust Co.*, 296 Ill.App.3d 593, 694 N.E.2d 1108, 1117 (1st Dist. 1998). The plaintiff can meet this burden by establishing, *inter alia*, how the requested relief would serve to protect the interests of consumers. *Brody v. Finch Univ. of Health Sciences*, 298 Ill.App.3d 146, 698 N.E.2d 257, 269 (2d Dist. 1998). Menasha contends that the required nexus to consumer interests is met by the fact that consumers were given the benefit of News America's coupons but were denied the benefit of coupons from Menasha's dispensers due to News America's exclusive contracts with retailers. This fact, standing alone, is insufficient to support Menasha's contention that its dispute with News America implicates the type of consumer protection concerns contemplated by the Act. *See Speakers of Sport*, 178 F.3d at 868. Menasha therefore has no standing to sue under ICFA and News America is entitled to summary judgment on this aspect of Count IX.

Count IX also alleges a claim under the Uniform Deceptive Trade Practices Act (the "DTPA"). DTPA was designed to address conduct involving either misleading trade identification or false and deceptive advertising. *See Industrial Specialty Chemicals, Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 812 (N.D. Ill. 1995);

see also 815 ILCS 510/2. Even construing the record in the light most favorable to Menasha, this is simply not a case implicating conduct related to consumer confusion or deception, and DTPA therefore does not provide Menasha with a remedy. *See Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1065 (N.D. Ill. 1982). Menasha's common law unfair competition claim does not need to be addressed separately, since DTPA is merely a codification of the Illinois common law of unfair competition. *McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1173 n.9 (7th Cir. 1986). For the foregoing reasons, News America is entitled to summary judgment on Count IX.

### *Tortious Interference*

In Illinois, the elements of a claim for tortious interference with prospective business relations are: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 568 N.E.2d 870, 878 (1991). The theory underlying this tort is that some conduct is so odious that it goes beyond the bounds of legitimate competitive practices. *Adviani v. Sisters of St. Mary*, 1987 WL 18934, at *3 (N.D. Ill. Oct. 22, 1987).

Menasha has not, as is its burden, pointed the Court to facts establishing how individual business relationships were directly spoiled by specific acts of News America.  Rather, Menasha puts forward a generalized complaint that its at-shelf coupon dispenser business was not as successful as it could have been due to the presence of News America in the market.  The record provides no basis for a finding that tortious conduct on the part of News America was the cause of Menasha's difficulties in building business relationships with the retail chains in question.  Rather, the record indicates that Menasha made a conscious decision *not* to compete with News America directly.  As one Menasha executive put it, Menasha preferred the "old-fashioned way of doing business," rejected News America's business model, and avoided direct competition with News America when possible.  Conversely, a company called FloorGraphics had great success in breaking into the market and establishing relationships with large retail chains by offering financial incentives to retailers similar to those offered by News America.  Menasha's difficulties in maintaining and expanding its business for at-shelf coupon dispensers is not attributable to tortious interference by News America, but to Menasha's refusal (or inability) to adapt its business model to new realities.  "That is the process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system.

*Competition is not a tort.*" *Speakers of Sport*, 178 F.3d at 865 (Posner, C.J.)(emphasis added). Accordingly, News America is entitled to summary judgment on Count X.

## CONCLUSION

For the reasons set forth above, Menasha's Motion In Limine to Exclude the Relevant Market Opinions of Drs. Rapp and Stiroh is **DENIED**, News America's Motion In Limine to Exclude the Report and Testimony of James Tenser and the Opinions of Dr. James Langenfeld That Rely on Tenser's Survey Research is **GRANTED IN PART AND DENIED IN PART**. News America's Motion to Strike Menasha's Responses to Defendants' Local Rule 56.1 Statement is **DENIED**. News America's Motion to Strike Menasha's Statement of Material Facts under Local Rule 56.1 is **DENIED**. News America's Motion for Summary Judgment is **GRANTED** and the case is **DISMISSED** pursuant to Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: _January 7, 2003_